UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VINCENT CAMERA,<br>    *Plaintiff*, | 3:18-cv-00095 (KAD) |
| v. | |
| TARGET CORPORATION,<br>    *Defendant*. | June 8, 2020 |

MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 42)

Kari A. Dooley, United States District Judge:

Plaintiff Vincent Camera ("Mr. Camera," or the "Plaintiff") filed this action against Target Corporation ("Target," or the "Defendant") alleging that he sustained serious injuries from a fall in a Target store in North Haven, CT, which the Plaintiff alleges was due to Target's negligence in, *inter alia*, failing to maintain the safety of its premises. Pending before the Court is Target's motion for summary judgment (ECF No. 42), to which Mr. Camera has objected (ECF No. 58), and to which Target has filed a reply. (ECF No. 61.) For the reasons set forth below, the Defendant's motion for summary judgment is GRANTED.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the

1

nonmoving party.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  Accordingly, the moving party satisfies its burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (quotation marks and citations omitted).  Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)).  "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish a disputed fact.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  The standard thus requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).

In assessing the presence or absence of a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (*per curiam*) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues

2

of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Material Facts**

The following facts are drawn from the parties' Local Rule 56(a) Statements of Undisputed Material Facts and exhibits in the record.

On September 10, 2016, the Plaintiff was shopping in the Target store in North Haven, CT with his grandson, Christopher Ciarleglio ("Chris"), when he slipped and fell sometime around 11:45 A.M. in the vicinity of what is known as the "soft lines" department, leading him to hit his head and develop a cut over his eye. Two different Target employees claim to have responded to the scene—Luis Silva ("Lou") and Francisco Alvarez ("Frank"),[1] although Chris remembers only one Target employee attending to his grandfather's fall. Outside of Chris and these two employees, there are no other identified witnesses to the events surrounding the accident.[2] The witnesses' three accounts differ as described below.

### Chris Ciarleglio

Chris was sixteen years old at the time of the accident. (Ciarleglio Dep. Tr. at 41:19.) He and his grandfather used to go to the Target store in North Haven together all of the time and would walk the same route. (*Id*. at 8:2–8.) In his deposition he described the incident as follows:

> He just—all of a sudden I saw—he was probably saying something to me and then all of a sudden I just saw him fall and I saw his head bounce right off the floor. And that's when I went over to the spot and I was like wiping my foot and it seemed like it was bubbly. It didn't seem like it was water. Probably like a soap. It seemed weird.

---

[1] The Court refers to the witnesses by their first names because many of the parties' submissions, including the attached exhibits and deposition transcripts, refer to the witnesses by their first names.

[2] Chris testified that a family that was shopping nearby also witnessed his grandfather's fall and provided some assistance, but the family left before any Target employee arrived at the scene and therefore did not speak with any employee about what they observed. (Ciarleglio Dep. Tr. at 29:20–25; 30:10–15, Pl.'s Ex. A, ECF No. 58-3.) These individuals remain unidentified.

3

> Then I looked at him and I thought—I knew he fell really hard and I was trying to get him up and I knew he was out of it and there was a family next to us and they were like, "What happened?" Like they were all concerned. And we like moved him towards like a mannequin, whatever, something he could just lean up against, away from where he fell. And he was like, "I'm fine, I'm fine," but I knew he wasn't. He was all out of it. And I don't know if the family—I don't know if somebody saw—and then the guy came over and mopped the area where he fell.
>
> And then my grandpa was still like down at the time, he was like leaned up, and that's when they like had him sign that paper, whatever. And I asked him, I said, "What's that?" And then he was just like, "It's just precautionary. That's what we usually do when there's falls or whatever."
>
> And then we like got my grandpa—me and that family got my grandpa up and we went towards like the doors where like the guest services are, like where the bathrooms are, and that's where we were just waiting. And nobody ended up coming and we just left and I had to drive home.

(*Id*. at 15:6–25; 16:1–12.) Chris testified that there was only one Target employee who attended to his grandfather, and that the employee who had him sign the accident report form was the same employee who mopped up the area where his grandfather had fallen. (*Id*. at 16:20–25; 22:23–25.) He estimated that the employee arrived about fifteen minutes after the fall with the mop, which he described as a long janitor mop. (*Id*. at 17:19–20; 36:1–6.) Chris could not remember much about what the employee looked like, other than that he was a white male, whom he described as tall and skinny and somewhere around his mid-twenties to early-thirties. (*Id*. at 17:1–16.) He testified that the employee cleaned up the "wet and bubbly" substance from the floor after Chris pointed it out, before asking his grandfather to sign the accident report. (*Id*. at 18:14–17; 22:4–14.)

When asked if he knew how long the soapy substance was on the floor, Chris responded that "[i]t looked like relatively new, newer. It didn't look like anybody stepped on it or anything like that." (*Id*. at 25:17–21.) He estimated that the slippery area was about the size of counsel's Redweld folder (*id*. at 29:5–8) and also described it as "clear, kind of like white colored." (*Id*. at 35:8–9.) He did not recall any of the soapy substance being on his grandfather's clothes and he

4

did not take any pictures of what he saw on the floor. (*Id*. at 27:8–16.) He testified that he put his foot over it, however, and it appeared to be very slippery. (*Id*. at 35:13–16.) According to Chris, the Target employee apologized when Chris pointed out the substance on the floor; he also described the employee as carrying a clipboard and moving very fast. (*Id*. at 27:19–21.) Later in his deposition he also recalled the employee having a spray bottle with him and spraying the area before mopping. (*Id*. at 37:11–12; 38:20–23.) Chris testified that the employee also cleaned up blood on the floor using the spray bottle and paper towels without the mop while on his hands and knees, and that the blood was at least five feet away from the area of the soapy substance. (*Id*. at 39:22–25; 40:7–12.)

Chris further testified that the Target employee did not ask his grandfather about the cause of the fall and "just literally gave him the paper to sign." (*Id*. at 20:14–17.) He estimated that the entire interaction lasted two to five minutes at most. (*Id*. at 42:8–9.) He did not have any recollection of his grandfather saying "that he just tripped over his own feet." (*Id.* at 20:21–25; 21:1–5.) Chris testified that he did not speak with any other Target employee on the day of the accident. (*Id*. at 41:6–8.)

**Lou Silva**

Lou testified that he was serving as the store's leader on duty ("LOD") on the day in question when Frank Alvarez alerted him to the Plaintiff's fall via walkie talkie. (Silva Dep. Tr. at 21:15–20, Pl.'s Ex. B, ECF No. 58-4.) Lou went immediately to the accident site, where he came upon the Plaintiff sitting near a mannequin with a paper towel over his eye. (*Id*. at 25:3–6.) According to Lou, Frank was already there, speaking with the Plaintiff at the time he arrived. *(Id*. at 25:20–21.) Lou spoke with the Plaintiff and his grandson and reviewed the questions on Target's accident report list. (*Id*. at 26:14–23.) While Target policy usually dictates that two

5

separate incident reports be filled out—one that tracks the LOD's impressions and another that relays the guest's narrative—Lou did not have the proper LOD form and so he used the guest incident report twice—one time for each purpose.  (*Id*. at 34:24–25; 35:1–11.)

In the guest version of the report, which the Plaintiff signed, Lou wrote "Tripped on floor" as the cause of the accident.  (Guest Incident Report, Def.'s Ex. B, ECF No. 42-4.)  In the LOD version of the report, he wrote "Nothing tripped walking" as the accident cause.  (LOD Report, Def.'s Ex. C, ECF No. 42-5.)  In both versions of the report, Lou checked the boxes indicating that Mr. Camera's clothes were not wet or damaged, that the floor/ground was clean and dry, and that there was no object involved.  Lou testified that he did not observe any liquid on the ground near where the Plaintiff fell and was not aware of another store employee having cleaned up anything on the floor before he arrived at the accident scene.  (Silva Dep. Tr. at 27:7–11.)  Nor did he recall seeing any blood on the ground.  (*Id*. at 29:17–20.)  Lou testified that he did not carry a mop or any cleaning materials when he came to speak with the Plaintiff (*id*. at 25:22–25; 26:1–4) and he did not see Frank with a mop or broom, either.  (*Id*. at 26:5–9.)

In an affidavit submitted after his deposition, Lou repeated that the floor was clean and dry when he arrived at the scene of the accident and that he did not observe any liquid or bubbly substance on the floor.  (Silva Aff. ¶¶ 6–8, Def.'s Ex. E, ECF No. 42-7.)  He also stated that "[o]n the Guest Incident Report signed by the plaintiff I noted 'tripped on floor' as those were the plaintiff's words."  (*Id*. ¶ 11.)  According to Lou, neither Mr. Camera nor his grandson pointed out any liquid or bubbly substance on the floor near the site of the fall.  (*Id*. ¶¶ 12–13.)  He maintains that he did not respond to the accident with a mop, broom, or any cleaning supplies or observe any other Target employee doing so, that he did not instruct any other Target employee to arrive with

a mop or other cleaning supplies, and that there was no indication that the area was cleaned before he arrived. (*Id*. at ¶¶ 14–17.)

### Frank Alvarez

Frank served as an executive team leader of asset protection for Target at the time of the event, which meant he was in charge of protecting both store merchandise and the safety of team members and guests. (Alvarez Dep. Tr. at 8:3–10, Pl.'s Ex. C, ECF No. 58-5.) Frank could not remember who specifically informed him of the Plaintiff's fall but he noted that it was Target policy for a team member to remain with an injured guest and so he believed another employee may have been there (other than Lou) when he arrived at the scene. (*Id*. at 24:6–15; 44:9–19.) He testified that he did not observe any liquid on the floor near the site of the accident other than blood. (*Id*. at 26:7–9.) Frank testified that he believed he cleaned up the blood in connection with the Plaintiff's fall and that he likely used a disinfectant spray bottle or can in doing so. (*Id*. at 22:5–10; 23:12–17.) He did not observe any other employee with a mop or otherwise performing any cleanup and testified that it would have been unusual for someone else to have come and cleaned the floor but left the blood before he arrived. (*Id*. at 26:10–14; 25:23–25.) He acknowledged on cross-examination, however, that in light of his testimony that another Target employee was with Mr. Camera and his grandson before he arrived, he did not know whether that employee could have cleaned the floor before he arrived. (*Id*. at 45:4–17.) He also acknowledged that not all Target employees are permitted to clean up blood due to the special training the task requires. (*Id*. at 62:20–23.) When asked whether he knew whether someone else had used a mop prior to his arrival to clean the area where the Plaintiff fell, Frank acknowledged that it was possible

7

but "they would have to have moved very quickly to get a mop, clean it up and run back without me seeing them" given the timing.[3] (*Id*. at 47:5–20.)

Frank recalled the Plaintiff being very apologetic and attributing the fall to his having tripped over his own feet. (*Id*. at 26:22–24.) He believed Lou assisted the Plaintiff in completing the incident report. (*Id*. at 30:5–8.) Frank testified that the description in the incident reports completed by Lou was consistent with what he remembers Mr. Camera telling him about the cause of the fall. (*Id*. at 34:9–14; 35:14–21.)

**Other Relevant Evidence**

In a medical record dated September 14, 2016, Mr. Camera reported that his left side was "hurting due to fall at Target." (Def.'s Ex. I, ECF No. 42-11.) The medical record further reflects that "pt states his foot got caught and fell." (*Id*.) A medical record from a neurology visit dated September 29, 2016 states that on September 10, the Plaintiff "was walking through the department store when he tripped over a lip in the floor."[4] (Def.'s Ex. J, ECF No. 42-12.) During his deposition the Plaintiff testified that he did not remember seeing anything on the ground, including a liquid, that may have caused his fall. (Pl.'s Dep. Excerpt at 22:2–10, Def.'s Ex. D, ECF No. 42-6.) He stated: "All I know is I hit something, and that was the last thing I remember. I don't know if it was liquid or whatever it was. I went down hard." (*Id*. at 22:19–21.) The Plaintiff also did

---

[3] It is undisputed that video surveillance footage from the time of the Plaintiff's fall did not depict any Target employees carrying a mop or broom to the accident site. (*See* Def.'s Local Rule 56(a) Statement ¶ 12, ECF No. 42-2; Pl.'s Local Rule 56(a) Statement ¶ 12, ECF No. 58-2.) However, the specific area where the Plaintiff fell was not one covered by the store's video security system and so there is no footage depicting the accident scene itself. (*See* Alvarez Dep. Tr. at 49:8–18.) According to Target, the video footage does show, however, that only 2 minutes and 42 seconds elapsed between the time that the Plaintiff was last seen in the footage and the time that Frank was seen responding to the scene of the accident. (*See* Def.'s Mem. at 11.) The Court notes that Target did not cite to the evidence of record in support of this assertion. However, nor did the Plaintiff challenge its accuracy.

[4] In his Local Rule 56(a) Statement, although the Plaintiff denies the Defendant's statement that he "told Dr. Mednick that he tripped over a lip in the floor" (*see* Def.'s Local Rule 56(a) Statement ¶ 9), he does not, as required by Local Rule 56(a), support the denial with a citation to the evidence of record. Accordingly, this statement is deemed admitted.

not remember having a conversation about the cause of the fall with a Target employee or agreeing with a Target employee that the floor was clean and dry. (*Id.* at 22:11–14; 51:2–4.) The Plaintiff testified that about a month after the incident, he went back to the Target store with his family to take photos and did not see anything in the area where he fell. (*Id.* at 62:4–12; 63:18–20.) Instead he opined:

> I think somebody might have spilled something. That's the only thing I can think of. Maybe somebody spilled something, soap or something, and nobody saw it and I hit it. That's the only conclusion I came up with. I don't know. I can't tell you.
> . . .
>
> Chris said he saw some foamy stuff on the floor. I thought maybe somebody spilled a little soap and they didn't realize it. I don't know.

(*Id.* at 63:21–25; 64:1, 4–6.)

**Discussion**

The parties do not dispute that as a business invitee, Target owed Mr. Camera "a duty to 'keep its premises in a reasonably safe condition.'" *DiPietro v. Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012) (quoting *Baptiste v. Better Val–U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002)). "[F]or a plaintiff to recover for the breach of a duty owed to him as a business invitee," he must "prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused his injury or constructive notice of it." *Id.* at 116–17 (quoting *Baptiste*, 262 Conn. at 140) (alterations omitted). In addition:

> [t]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . a defendant is held to the duty of protecting its business invitees from known, foreseeable dangers.

*Id.* at 117 (quoting *Baptiste*, 265 at 140) (alterations omitted).

Target first asserts that summary judgment should be awarded in its favor because the

Plaintiff has put forth insufficient evidence to establish any defect—specifically that there was a liquid substance on the floor at the time that he fell.  However, on this issue, the testimony is conflicting.  As discussed above, Chris testified that he saw a soap-like substance, that he pointed it out to the Target employee who came to the site of the accident, that the Target employee used a mop to clean the floor, and that the substance was very slippery.  This testimony stands in stark contrast to the evidence submitted by Target, but it is not for the Court "to weigh the evidence or resolve issues of fact." *Lucente*, 310 F.3d at 254.  Indeed, on the narrow issue of whether there was, in fact, a defect, if a jury credited Chris's testimony, it could find in the Plaintiff's favor on this issue.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment") (quotation marks and citation omitted).

        This is not the end of the inquiry, however.  The Plaintiff must also establish that Target had either actual or constructive notice of the alleged defect.  On this issue, Target is entitled to summary judgment because the Plaintiff has not identified any evidence from which the fact-finder could conclude that Target had such notice.

        Mr. Camera has not put forth any evidence indicating that Target had actual notice of the alleged slippery substance that caused his fall, and the parties dispute whether he has carried his burden of creating a genuine issue of material fact as to whether Target had constructive notice of this allegedly hazardous condition.  "Business owners are chargeable with constructive notice of a dangerous condition when, had they exercised reasonable care, they would have discovered the condition." *DiPietro*, 306 Conn. at 117–18.  "Constructive notice is triggered by a general duty of inspection or, when the dangerous condition is not apparent to the human eye, some other factor that would alert a reasonable person to the hazard." *Id*. at 118.  In this context the question is

whether the alleged soapy substance on the floor "had existed for such a length of time that [Target's] employees should, in the exercise of due care, have discovered it in time to have remedied it." *Kelly v. Stop & Shop, Inc.*, 281 Conn. 768, 777, 918 A.2d 249 (2007) (quotation marks and citation omitted). The Connecticut Supreme Court has stated:

> What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case. The nature of the business and the location of the foreign substance would be factors in this determination . . . To a considerable degree each case must be decided on its own circumstances. *Evidence which goes no farther than to show the presence of a slippery foreign substance does not warrant an inference of constructive notice to the defendant.*

*Id*. (emphasis added) (quotation marks and citations omitted).

Even drawing all inferences in the Plaintiff's favor, the evidence "goes no farther than to show the presence of a slippery foreign substance" and otherwise fails to identify any factor, including the passage of a sufficient length of time, which would permit a reasonable fact finder to conclude that a Target employee should have discovered the substance in time to clean it before the Plaintiff fell. In fact, Plaintiff's entire case as to both the existence of the slippery substance and constructive notice begins and ends with Chris's testimony. And the only potentially probative evidence on the notice issue undermines any finding that the substance remained on the floor for an unreasonably long time. Chris testified that "[i]t looked like relatively new, newer. It didn't look like anybody stepped on it or anything like that." (Ciarleglio Dep. Tr. at 25:19–21.) Target also submitted evidence indicating that it had received no complaints about falls involving "an accumulation of liquid near the Soft Lines department in the two years prior." (Def.'s Resp. to Pl.'s Interrogs. No. 9, Def.'s Ex. H, ECF No. 42-10.)

Citing only Connecticut cases applying Connecticut's rules of procedure, the Plaintiff argues that Target is not entitled to summary judgment on this issue because it has not put forth sufficient evidence demonstrating the absence of constructive notice. (*See* Pl.'s Mem. at 3.) It is

11

well established that "[a] federal court sitting in diversity must apply state substantive law and federal procedural law." *All Am. Tel. Co., Inc. v. AT & T Corp.*, 328 F. Supp. 3d 342, 354 (S.D.N.Y. 2018). "As courts in this Circuit have held, the summary judgment standard is procedural, and there is a federal procedural rule on point—i.e., Rule 56." *Id*. It is not the Defendant's obligation, under the Federal Rules of Civil Procedure, to proffer affirmative evidence on an issue on which the Plaintiff carries the burden of proof, and therefore the cases cited by the Plaintiff are inapposite. *See, e.g.*, *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (explaining that "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim" to satisfy the movant's initial burden on a motion for summary judgment under Fed. R. Civ. P. 56); *see also Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 400–01 (E.D.N.Y. 2010) (declining to apply "more plaintiff-friendly New York summary judgment standard" in slip and fall case, which would require the defendant to put forward affirmative evidence that it lacked constructive notice of the hazard, and explaining that "[t]he defendant in federal court is thus able to rely to a much greater extent on showing an absence of evidence or 'gaps' in the plaintiff's case than would be his state counterpart").

      Here, Target has pointed to the complete lack of evidence supporting the Plaintiff's claim that the alleged slippery substance remained on the floor long enough to give rise to constructive notice of a hazardous condition. Accordingly, under the Rule 56 analysis, the burden shifts to Mr. Camera to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs.*, 735 F.3d at 123 (quotation marks and citation omitted). This he has failed to do. Instead, he argues without citation that "M[r]. Alvarez's

testimony makes clear that the defendant had no inspection policy in place nor did it conduct any inspections of the area where the plaintiff fell, despite the aisle being an area that customers, like the plaintiff, would likely walk through during their visits to the defendant's store." (Pl.'s Opp. at 15.)  He simultaneously, and contradictorily, asserts that Target has specific maintenance and inspection policies from which one can infer constructive notice, citing *Chaves v. Exxon Mobile Corp.*, No. 3:06-CV-1589 (JCH), 2008 WL 220748 (D. Conn. Jan. 25, 2008).  (Pl.'s Mem. at 12–13.)

Neither of these arguments is supported by the record or the law.  Although Lou testified that Target did not conduct regularly-scheduled floor inspections (*see* Silva Dep. Tr. at 17:22–25), both Lou and Frank testified that it was standard for employees in management positions to conduct a "brand walk" in which they would assess the condition of the store at the beginning of their shift before the store opened.  (Silva Dep. Tr. 16:10–20; 20:1–4; Alvarez Dep. Tr. at 15:8–23.)  Lou testified that he did not recall noticing anything out of the ordinary in the soft lines department during his brand walk on the day of the Plaintiff's accident.  (Silva Dep. Tr. at 20:19–21.)  He also stated in his affidavit that all Target employees "are trained and instructed to continually be on the lookout for any dangerous or defective condition on the premises."  (Silva Aff. ¶ 18.)  Frank likewise testified that despite the lack of a formal inspection schedule, Target employees "were expected to go out constantly and be a presence on the floor during th[e] day . . . at multiple points in time." (Alvarez Dep. Tr. at 42:6–11.)  The Plaintiff's contention that Target failed to inspect the area where Plaintiff fell is "mere speculation or conjecture as to the true nature of the facts," *Hicks*, 593 F.3d at 166, and accordingly does not suffice to create a genuine issue of material fact.  *See Dominguez v. United States*, 963 F. Supp. 2d 107, 122 (D. Conn. 2013) ("[A]n inference of constructive notice must have some definite basis in the facts . . . and the conclusion

based on it must not be the result of speculation and conjecture.") (quotation marks, alterations, and citation omitted); *see also Navarro v. Kohl's Dep't Stores, Inc.*, No. 3:05-CV-00843 (DJS), 2007 WL 735787, at *5 (D. Conn. Mar. 8, 2007) ("In the present case, the only evidence that the defect existed prior to Navarro's fall is that she fell. Neither Navarro nor any of the deposed store employees testified to seeing the spill or having notice of it prior to the accident. Without at least some evidence, direct or circumstantial . . . as to how long the spill existed prior to Navarro's fall, it would be too speculative for a jury to infer the length of time the spill was in place so as to establish constructive notice.").

Plaintiff's reliance on *Chavez* is also misplaced. There, the court denied summary judgment on the issue of constructive notice where the evidence showed that the defendants had a "policy on 'Snow and Ice Removal,' which directs employees to 'walk the lot regularly reporting and removing ice and snow hazards promptly' and 'acting to control changing conditions that are the recipe for ice . . . [i.e.] the temperature is dropping (i.e.overnight) or colder weather is in the forecast." 2008 WL 220748, at *5. The plaintiff there had put forth evidence concerning the weather forecast during the hours before her fall, and the District Court found that the defendant's policy regarding snow and ice removal could lead a reasonable fact finder to conclude that the defendant had constructive notice of the ice that allegedly caused the plaintiff's fall by virtue of its policy obligating it to perform inspections "whenever icing was a possibility." *Id*. Here, by contrast, while the Plaintiff refers to three documents allegedly setting forth Target's maintenance and inspection policy without citation to the record (Pl.'s Opp. at 13–14), the Plaintiff does not identify any specific evidence concerning conditions in the store on the day of his fall, outside of the fall itself, from which constructive notice could be inferred. And as previously noted, as Chris

14

himself described the substance—"[i]t looked like relatively new, newer.  It didn't look like anybody stepped on it or anything like that."  (Ciarleglio Dep. Tr. at 25:19–21.)

In sum, because the record is without evidence from which a jury could infer that the alleged soapy substance remained on the floor for an unreasonable length of time, or any other evidence suggesting that Target failed to exercise reasonable care in discovering the hazardous condition, the Plaintiff has failed to identify a genuine issue of fact on the issue of constructive notice and Target is entitled to summary judgment.

**Conclusion**

For the foregoing reasons, the Defendant's motion for summary judgment is granted.  The Clerk of Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of June 2020.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE